PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**April 29, 2008**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____ DEPUTY

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

| In re: | Case No. 08-40599 |
|---|---|
| EQUA-CHLOR LLC, | **MEMORANDUM DECISION** |
| Debtor. | **\*\*NOT FOR PUBLICATION** |

THIS MATTER came before the Court on April 23, 2008, on Debtor's Motion for Approval of Parsons Compromise Pursuant to Bankruptcy Rule 9019 and Emergency Motion for Interim and Final Orders (1) Authorizing Debtors to (A) Obtain Postpetition Secured Financing and (B) Utilize Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties; and (III) Scheduling Final Hearing. Objections to both motions were filed by the Official Unsecured Creditors Committee (Committee). At the conclusion of the hearing, the Court took the matter under advisement. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Fed. R. Bankr. P. 7052.

**I**

**FINDINGS OF FACT**

Equa-Chlor LLC (Debtor) filed a voluntary Chapter 11 petition on February 15, 2008. On that same date, the Debtor filed an Emergency Motion for Interim and Final Orders (I)

MEMORANDUM DECISION - 1

Authorizing Debtors to (A) Obtain Postpetition Secured Financing and (B) Utilize Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties; and (III) Scheduling Final Hearing (Financing Motion). A hearing was held on February 19, 2008, and continued to February 21, 2008, for presentation of an order. After substantial revisions, on February 21, 2008, the Court entered a First Interim Order granting in part the Debtor's Financing Motion and scheduling a further hearing on March 6, 2008. At the March 6, 2008 hearing, the Court entered a Second Interim Order granting in part the Debtor's Financing Motion and scheduled a final hearing for April 7, 2008. The final hearing was continued by the parties to April 23, 2008.

On March 14, 2008, the Debtor filed Debtor's Motion for Approval of Parsons Compromise Pursuant to Bankruptcy Rule 9019 (Compromise Motion). The Compromise Motion purports to resolve two major disputes: (1) a dispute arising between the Debtor and Parsons RCI, Inc. (Parsons) concerning cost overruns and delays arising from Parsons construction of the Debtor's chlor-alkali plant, and (2) Parsons' disputed claim that it holds a valid and perfected mechanics' and materialmen's lien against the Debtor's real property interests senior in priority to Debtor's lender, Prudential Insurance Company of America (Prudential). These disputes are the subject of two pending prepetition legal proceedings: a lien enforcement action filed by Parsons in Cowlitz County Superior Court and an arbitration proceeding.

The primary terms of the originally proposed settlement can be summarized as follows:

(1)   Three million dollars in cash to be paid by the Debtor to Parsons in three equal installments of one million dollars, with the first payment due no later than 11 days after the settlement is approved, and the second and third payments to be made 90 and 180 days thereafter;

MEMORANDUM DECISION - 2

(2)     Four million dollars in senior secured debt to be issued by the Debtor to Parsons under a plan of reorganization, payable over a three year term, secured by all of the Debtor's assets, pari passu with senior secured debt of no more than seventeen million dollars;
(3)     Five percent equity interest granted to Parsons in the reorganized Debtor, not to exceed two million dollars; and
(4)     Mutual release by the Debtor, Parsons and Prudential of all claims and dismissal of the arbitration and lien enforcement lawsuit upon the effective date of the plan of reorganization.

In response to the Committee's objection to the proposed settlement, an Amended and Restated Settlement Agreement (Amended Settlement Agreement) was filed on April 21, 2008. The Amended Settlement Agreement provides for an allowed claim to Parsons of nine million dollars, but revises the terms for payment of their asserted claim. Rather than receiving any distributions preconfirmation, the Amended Settlement Agreement provides that the first one million dollar payment will not be due until the effective date of the Plan of Reorganization (Plan). The next payment of one million dollars is due 90 days after the first payment, and a third one million dollar payment 90 days after the second payment. The Amended Settlement Agreement also adds provisions for distribution of the proceeds upon a sale of the Debtor's assets. Upon a sale, after payment of the Debtor-in-Possession (DIP) advances and any secured claims on the assets sold, seven million dollars is to be paid to Parsons and thirteen million dollars to Prudential. Remaining proceeds are to be shared on a pro rata basis, with 5% paid to Parsons (not to exceed two million dollars) and 95% to Prudential, up to the full amount of its secured claims.

The issues before the Court are whether the Compromise and Financing Motions should be approved.

MEMORANDUM DECISION - 3

## II

## CONCLUSIONS OF LAW

When the Chapter 11 petition was filed, the Debtor came before the Court, as is typically done, seeking several first day orders, including an interim order regarding cash collateral and to obtain DIP financing pursuant to Fed. R. Bankr. P. 4001. The financing issues were complicated by a pending dispute between Prudential and Parsons over lien priority. The Debtor was faced with the difficult task of convincing Prudential to provide additional funding in light of an unresolved dispute as to its lien priority, and a concern as to whether the liens of Parsons and Prudential were adequately protected by the Debtor's collateral. After extensive negotiations between the parties, a settlement was reached between the Debtor, Prudential and Parsons as to the amount and treatment of Parsons' disputed claim. The settlement paved the way for the parties to resolve many of the previously existing DIP financing obstacles.

When the majority of these negotiations and discussions were occurring, an unsecured creditor's committee had not yet been appointed. The Debtor was involved in the discussions, but clearly had little leverage. The parties agree that the driving force behind the Compromise and Financing Motions were the secured creditors, Parsons and Prudential.

A primary purpose behind the establishment of an unsecured creditor's committee is to create a mechanism to ensure that unsecured creditors have a voice in the reorganization process. Since its involvement in this case, the Committee has raised legitimate concerns as to the proposed Parsons' compromise and DIP financing. In response to the Committee's objections, Parsons, Prudential and the Debtor have made substantial concessions. The

issue now before this Court is whether these proposed revised agreements should be approved.

### A. Financing Motion

The Committee objected to several key terms in the Financing Motion: (1) the proposed roll-up of Prudential's prepetition debt, (2) accrual of interest on Prudential's prepetition debt at default rates, (3) granting of administrative priority for funds advanced by Prudential to pay Parsons' claim, and (4) reduction of the Plan exclusivity period.

In response to the Committee's objections, the Debtor filed a reply on April 21, 2008, and agreed to extend the exclusivity periods and eliminate any provisions that Parsons be paid outside of a confirmed Plan. Prudential filed a further reply on April 22, 2008, agreeing that interest on its prepetition secured debt would accrue after entry of the final order at the contractual, non-default rate. Prudential also agreed to eliminate the condition that the Working Capital Loans (as defined in the DIP Credit Agreement) be refinanced, with the result that the proposed postpetition credit facility was reduced from $16.2 million to ten million dollars. Such concessions were presumably achieved in direct response to the objections filed by the Committee.

At the April 23, 2008 contested hearing, the Committee asked the Court to approve the Financing Motion as modified above, but deny the Compromise Motion. From the beginning, however, Parsons has indicated that it will only consent to a priming lien in favor of Prudential if the Compromise Motion is also approved. Prudential requires the priming lien as a condition of the DIP postpetition financing. Accordingly, if the Compromise Motion is not approved, Parsons will not consent to the priming lien and Prudential will not agree to postpetition financing.

MEMORANDUM DECISION - 5

The Court disagrees with the Committee and concludes that Parsons has not waived its right to argue that its lien primes Prudential by not filing a conditional objection to the Debtor's financing proposal. The Court is also not convinced that adequate protection exists to prime Parsons' lien under 11 U.S.C. § 364(d). Although the book value of the Debtor's assets were stated at sixty-nine million dollars when the Financing Motion was filed, there is not sufficient evidence that the book value equates to the fair market value so that there is sufficient equity to prime either Parsons or Prudential. The Debtor does not appear to have any other means of providing adequate protection.

In addition, the Court concludes the statements made by Kent Mordy (Mordy) in his declarations and testimony at the hearing on April 23, 2008, as to the Debtor's inability to obtain more favorable postpetition funding from another source, to be credible. Based on the evidence provided, obtaining DIP financing through Prudential is the Debtor's only opportunity for remaining in operation at this time.

Thus, the Court must consider both motions together and evaluate the Compromise Motion to determine whether either should be approved.

**B.    Compromise Motion**

Fed. R. Bankr. P. 9019 provides that the bankruptcy court "may" approve a compromise or settlement. This permissive language leaves the approval of a compromise to the sound discretion of the bankruptcy judge. In re Stein, 236 B.R. 34, 37 (D. Or. 1999).

According to the prevailing law of the Ninth Circuit, the party proposing the compromise has the burden of persuading the bankruptcy court that the compromise is fair and equitable. In re A & C Props., 784 F.2d 1377, 1381 (9th Cir. 1986). In determining whether a compromise is fair and equitable, a court must consider:

MEMORANDUM DECISION - 6

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

A & C Props., 784 F.2d at 1381.

Not withstanding the A & C Props. factors, the Committee's primary objection appears to be that the Compromise Motion should not be approved at this stage in the reorganization process. The Committee instead urges the Court to defer ruling on this issue and allow the parties to resolve this claim as part of a Plan. The Committee's concerns are legitimate. The Committee's objections prompted the parties to renegotiate the terms of the settlement agreement and led to Parsons' agreement to defer payment of the three million dollars in installments until Plan confirmation. It is recognized that the Amended Settlement Agreement still retains features of a sub rosa plan in that it sets the amount of Parsons' claim and provides for treatment and payment of its claim under a Plan or in the event of a sale. The Court agrees with the Committee that it is preferable to reserve such issues until a plan of reorganization can be proposed, disclosure statement provided, votes cast, and an opportunity to object accorded all claimants.

In this case, however, where the Parsons' claim and the Prudential funding issues are so intertwined, it is necessary to deal with these contentious issue at an early stage because the Debtor's only realistic option for obtaining funding is dependent upon resolution of Parsons' claim and priority issues. Further, there is no provision in either order that would not permit creditors to vote against the Plan to be proposed by the Debtor, as only the settlement amount and lien priority determiniations between Parsons and Prudential would survive if the proposed Debtor's Plan does not meet the requirements of 11 U.S.C. § 1129.

MEMORANDUM DECISION - 7

### 1. **Probability of Success in the Litigation**

The first factor the Court is to consider in evaluating whether a settlement agreement is fair and equitable is the probability of success in the litigation.

When the petition was filed, Parsons had a mechanics' and materialmen's lien enforcement action pending against the Debtor in Cowlitz County Superior Court. Prudential was joined in that action as Parsons asserted lien priority over Prudential. An arbitration was also pending between Parsons and the Debtor to determine the amount due Parsons under the parties' construction agreement.

The Committee's primary objection under this factor appears to be whether the proposed settlement amount is reasonable. Under the Amended Settlement Agreement, Parsons will hold an allowed claim of nine million dollars.

The Committee focuses on the settlement offers exchanged between the parties in prebankruptcy mediation. At the mediation held on December 17, 2007, the Debtor offered Parsons a cash payment of $3.8 million dollars, which Parsons declined. The Debtor apparently based its offer on a report prepared by Synergen Consulting International. Parsons declined the Debtor's offer and indicated that it was unwilling to settle for anything less than eight million dollars. The Committee questions how an allowed claim of nine million dollars can be reasonable when the Debtor was unwilling to settle for eight million dollars two months prior to the bankruptcy petition being filed.

The Debtor, however, responds that the Committee's argument fails to take into account a variety of factors that render the mediation values less meaningful. For instance, Parsons' offer to settle for eight million dollars was an immediate cash offer. Although Parsons will get an allowed claim of nine million dollars under the Amended Settlement

MEMORANDUM DECISION - 8

Agreement, the payments will be paid out over time, with three million dollars paid in installments within 180 days of Plan confirmation, four million dollars over time and two million dollars in equity. Thus, Parsons is now assuming risk that must be taken into account. The payment of Parsons' claim will be delayed and there is no guarantee that a Plan will be confirmed, that the Debtor will be able to make the required payments, or that there will be any equity to receive.

The Debtor submitted several declarations, including that of its Chief Executive Officer, Clayton Pace (Pace), to support the reasonableness of the settlement amount. Pace provides an opinion as to why the settlement offers made in the mediation are of little relevance to this determination. The Court finds Pace's arguments to be persuasive.

The Debtor also submitted a declaration of Robert Ledford, Chief Financial Officer of Parsons, who claims that Parsons is still owed over ten million dollars for its costs. The original contract was for $13,907,318. The Debtor, however, apparently requested over ten million dollars in change orders. The ten million dollars in additional amounts due includes the contract balance plus approved change orders of $3,355,084, and additional work valued at $6,755.038. This amount does not include attorney's fees and costs.

The Amended Settlement Agreement is also beneficial to all parties in that it resolves the unsettled and complex issue of both the Parsons' claim and lien priority issues. Resolution of such issues clears the path for possible confirmation of a Plan or a potential sale of the Debtor's assets. The benefit to the parties in having all of these issues resolved is of considerable value.

In addition, the Court does not believe that granting the Committee additional time to review the Parsons' claim is necessary to properly evaluate the proposed settlement, as the

MEMORANDUM DECISION - 9

court record contains sufficient information for this Court to make an informed decision. Even though sufficient facts are needed to properly evaluate a settlement, the Court is not required to hold a full evidentiary hearing or "mini-trial" before a compromise can be approved. In re Pac. Gas & Elec. Co., 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004). Otherwise there would be little motivation to compromise. Instead, a court's proper role is to "canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." Pac. Gas & Elec., 304 B.R. at 417 (quoting In re Drexel Burnham Lambert Group, Inc., 134 B.R. 493, 496 (Bankr. S.D. N.Y. 1991) (citations and internal quotation marks omitted)).

In this case, the Court conducted a special set hearing on the Compromise Motion. Lengthy pleadings were filed by each of the parties. Numerous declarations and attachments were submitted, and the parties stipulated at the April 23, 2008 hearing, that such declarations would serve as direct testimony. Mordy, whose firm was hired as the Debtor's financial consultant, also offered live testimony at the hearing. The information provided and reviewed by the Court was sufficient to determine whether the Amended Settlement Agreement was fair and equitable as required by Fed. R. Bankr. P. 9019. Based on the evidence provided, the Court concludes that the settlement amount of nine million dollars falls within the range of reasonableness and is supported by the record.

### 2. Difficulties in Collection

The Court places little weight on this factor. The proposed settlement involves a claim that the Debtor is defending against rather than seeking any affirmative relief. Collectability is therefore irrelevant.

MEMORANDUM DECISION - 10

### 3. **Complexity of the Litigation Involved**

This third factor strongly weighs in favor of approval of the Amended Settlement Agreement. The factual and legal issues that must be resolved in order to determine the value of Parsons' claim and the lien priority issues are complex. It is undisputed that resolution of these issues would be extremely expensive. Counsel for the Debtor and Parsons have indicated that the amount of legal fees incurred in attempting to resolve this issue prepetition were in the millions of dollars and the inability of the Debtor to continue to fund this litigation was a primary factor in seeking bankruptcy protection. Resolution of such issues would also be time consuming and result in a lengthy delay of the reorganization process. Due to an arbitration clause, it is likely that the amount of the claim would be determined in another forum. Once the amount of the claim is determined, complex litigation over lien priority issues remain. It has been the experience of this Court that such delays decrease the likelihood that a Chapter 11 debtor will be able to successfully reorganize. Clearly the delay and attendant litigation costs will increase the administrative expenses and professional fees, which will decrease the probability that the unsecured creditors would receive any meaningful distribution.

The Amended Settlement Agreement is beneficial to all parties in that it resolves the unsettled and complex issue of the Parsons' claim and lien priority issues. Resolution of such issues clear the path for confirmation of a Plan.

### 4. **The Paramount Interest of Creditors**

The fourth factor also favors settlement. The interests of the secured creditors are served by the Amended Settlement Agreement in that it provides a resolution to what has been lengthy and costly litigation.

As for the Committee's objections, while a creditor's objection to a compromise must be afforded due deference, such objections are not controlling. A & C Props., 784 F.2d at 1382. "The law favors compromise and not litigation for its own sake, In re Blair, 538 F.2d at 851, and as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed." A & C Props., 784 F.2d at 1381 (citing In re Blair, 538 F.2d 849 (9th Cir. 1976)).

It is unknown whether sufficient equity exists in this case from which the unsecured creditors will receive a distribution. The Committee's best options for receiving any funds may well be from the potential lien avoidance actions, in which Prudential has waived any interest, and a prompt asset sale, as opposed to continued operations. There is a substantial benefit in moving this case forward, so that any equity that may exist today is not deteriorated by increased fees and other attendant costs. This case can only move forward if the lien priority issues are resolved and funding remains in place.

The Court has reviewed the proposed settlement in detail, considered all facts necessary to make an independent judgment, given due consideration to the Committee's objections and the factors set forth in A & C Props., and determines that the Amended Settlement Agreement is fair and equitable. The Financing Motion and Compromise Motion are approved.

DATED: April 29, 2008

_____
Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 12