# Exhibit "A"

First Amended Plan of Reorganization

HON. PAUL B. SNYDER

1

2

3

4

5

6

7

8      UNITED STATES BANKRUPTCY COURT
       WESTERN DISTRICT OF WASHINGTON
9                  AT TACOMA

10   In re:                          )   Case No. 08-40599
                                     )
11   EQUA-CHLOR, LLC,                )   FIRST AMENDED PLAN OF
                                     )   REORGANIZATION
12                          Debtor.  )
                                     )
13   ────────────────────────────────

14

15

16

17

18

19

20

21              Longview, Washington
22               February 17, 2009

23

24

25

26

LANE POWELL pc
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

123326.0013/1676230.1

# TABLE OF CONTENTS

**Page**

## ARTICLE I
## DEFINITIONS AND GENERAL PROVISIONS

Sections 1.1 to 1.134

Definitions .................................................................................................. 2

Section 1.2   Time ................................................................................................. 23

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS; IMPAIRMENT

Section 2.1   Summary ......................................................................................... 23
Section 2.2   Deemed Rejection of Plan. ............................................................. 24
Section 2.3   Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code .......... 25

## ARTICLE III
## TREATMENT OF CLAIMS AND INTERESTS

Section 3.1   Class 1—Secured and Unsecured Claim of Senior Prepetition
              Secured Lenders ............................................................................... 25
Section 3.2   Class 2—Secured and Unsecured Claim of Parsons ....................... 26
Section 3.3   Class 3—Secured Claim of Wells Fargo ........................................ 27
Section 3.4   Class 4—Secured Claim of Citicorp .............................................. 28
Section 3.5   Class 5—Secured Claim of Berman ................................................ 29
Section 3.6   Class 6—Priority Claims ................................................................ 29
Section 3.7   Class 7—General Unsecured Claims Without Priority .................. 30
Section 3.8   Class 8—ECM Intercompany Claims ............................................. 31
Section 3.9   Class 9—Original Membership Interests in Debtor and ECM ....... 32
Section 3.10  Special Provisions Governing Unimpaired Claims ....................... 32

## ARTICLE IV
## TREATMENT OF UNCLASSIFIED CLAIMS

Section 4.1   Summary .......................................................................................... 33
Section 4.2   Administrative Expense Claims ...................................................... 33
Section 4.3   Priority Tax Claims .......................................................................... 35
Section 4.4   DIP Lender Claims .......................................................................... 36

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 5.1   Assumption and Rejection of Executory Contracts and Unexpired
              Leases ............................................................................................... 36
Section 5.2   Rejection Damages Claims .............................................................. 37
Section 5.3   Cure of Defaults for Executory Contracts and Unexpired Leases .......... 38

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

Section 6.1   Substantive Consolidation ............................................................... 39

FIRST AMENDED PLAN OF REORGANIZATION - i

123326.0013/1676230.1

Section 6.2    Restructuring Transactions ........................................................39
Section 6.3    Waiver of Avoidance Actions....................................................41
Section 6.4    Compensation and Retention of Management Employees..........41
Section 6.5    Reorganized Debtor Capital Structure........................................41
Section 6.6    Effectuating Documents/Further Transactions ...........................42
Section 6.7    Marketing and Sale of Chlor-Alkali Facility .............................42
Section 6.8    Exemption from Transfer Taxes and Certain Recording Fees ..................43
Section 6.9    Expedited Tax Determination....................................................43
Section 6.10   Further Authorization ...............................................................44

## ARTICLE VII
## PROVISIONS REGARDING CORPORATE GOVERNANCE OF REORGANIZED DEBTOR

Section 7.1    Articles, Bylaws and Shareholder Agreement.............................44
Section 7.2    Directors and Officers of the Reorganized Debtor .....................45

## ARTICLE VIII
## DISTRIBUTIONS UNDER THE PLAN

Section 8.1    Distributions Generally..............................................................45
Section 8.2    Distributions of Cash ................................................................45
Section 8.3    No Interest, Attorneys' Fees and Costs Recoverable On Claims Or
               Interests ...................................................................................45
Section 8.4    Delivery of Distributions ...........................................................46
Section 8.5    Distributions To Holders As Of The Record Date .....................47
Section 8.6    De Minimus Distributions .........................................................47
Section 8.7    Fractional Dollars .....................................................................47

## ARTICLE IX
## PROCEDURES FOR TREATING AND RESOLVING DISPUTED CLAIMS

Section 9.1    Objections To Claims ................................................................47
Section 9.2    No Distributions on Disputed Claims.........................................48
Section 9.3    Estimation of Claims .................................................................48
Section 9.4    Resolution of Claims Objections ...............................................49
Section 9.5    Distribution Reserve ..................................................................49
Section 9.6    Distributions After Allowance...................................................50

## ARTICLE X
## EFFECT OF PLAN ON CLAIMS AND INTERESTS

Section 10.1   Revesting of the Debtor's Assets................................................50
Section 10.2   Release and Discharge of the Debtor and Reorganized Debtor.................51
Section 10.3   Mutual Releases........................................................................51
Section 10.4   Setoffs ......................................................................................52
Section 10.5   Exculpation and Limitation Of Liability ....................................52
Section 10.6   Injunction..................................................................................53
Section 10.7   Effect of Effective Date ............................................................54

FIRST AMENDED PLAN OF REORGANIZATION - ii
123326.0013/1676230.1

**ARTICLE XI**
**CONDITIONS PRECEDENT**

Section 11.1   Conditions to the Effective Date....................................................................55

**ARTICLE XII**
**RETENTION AND SCOPE OF JURISDICTION OF THE BANKRUPTCY COURT**

Section 12.1   Retention of Jurisdiction.............................................................................55
Section 12.2   Alternative Jurisdiction..............................................................................58
Section 12.3   Final Decree................................................................................................58

**ARTICLE XIII**
**MISCELLANEOUS PROVISIONS**

Section 13.1   Modification of the Plan ............................................................................59
Section 13.2   Allocation of Plan Distributions Between Principal and Interest.............60
Section 13.3   Creditors' Committee ................................................................................60
Section 13.4   Tax Provisions ...........................................................................................60
Section 13.5   Withholding and Reporting Requirements .................................................61
Section 13.6   Plan Supplement ........................................................................................62
Section 13.7   Applicable Law..........................................................................................62
Section 13.8   Headings ....................................................................................................62
Section 13.9   Revocation of Plan.....................................................................................62
Section 13.10  Severability of Plan Provisions.................................................................63
Section 13.11  No Admissions; Objection to Claims .......................................................63
Section 13.12  No Bar to Suits..........................................................................................63
Section 13.13  Exhibits/Schedules.....................................................................................64
Section 13.14  Conflicts....................................................................................................64

FIRST AMENDED PLAN OF REORGANIZATION - iii

123326.0013/1676230.1

## PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTOR

Equa-Chlor, LLC, debtor and debtor-in-possession in this case, proposes this plan of reorganization (the "Plan") for the resolution of its outstanding creditor claims and equity interests as well as the creditor claims and equity interests of Equa-Chlor Marketing, LLC, an affiliate of Equa-Chlor, LLC. Reference is made to the Disclosure Statement dated November 20, 2008 [Docket No. 347], which contains a discussion of the Debtor's organizational and operational history, its owners and affiliates, real and personal property, results of operations, projections for future operations, creditor claims and membership interests, description and analysis of the Plan, related risk factors and certain other matters, each of which is a central feature of the Plan. The Debtor urges all holders of claims or interests to read this Plan and the Disclosure Statement in their entirety before voting to accept or reject this Plan.

The Debtor is the proponent of this Plan within the meaning of Section 1129 of the Bankruptcy Code. As such, and subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Fed. R. Bankr. P. 3019, the Debtor reserves the right to alter, amend or modify this Plan, as the Debtor deems necessary, prior to its substantial consummation.

FIRST AMENDED PLAN OF REORGANIZATION – Page 1
123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

# ARTICLE I
## DEFINITIONS AND GENERAL PROVISIONS

**Section 1.1** *Definitions.*

For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them below. Any term used in this Plan not defined herein, but defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning provided for that term in the Bankruptcy Code or the Bankruptcy Rules.

1.1 "Adequate Protection Collateral" means the collateral of the Senior Prepetition Secured Lenders as set forth in the Final DIP Order.

1.2 "Administrative Agent" means Prudential as the agent of the Senior Prepetition Secured Lenders.

1.3 "Administrative Expense Claim" means a Claim (other than a claim under the DIP Loan) for payment of an administrative expense of a kind specified in section 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to, the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estate and operating the business of the Debtor, including wages, salaries or commissions for services rendered after the commencement of the Bankruptcy Case, Professional Compensation, and all fees and charges assessed against the Estate under 28 U.S.C. § 1930. Administrative Expense Claims include all Claims Allowed pursuant to the 503(b)(9) Procedures Order.

FIRST AMENDED PLAN OF REORGANIZATION – Page 2
123326.0013/1676230.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1    1.4    "Affiliate" has the meaning given such term by section 101(2) of the

2    Bankruptcy Code.

3    1.5    "Allowed Priority Claims" means Allowed Unsecured Claims, other than

4    claims for Professional Compensation, entitled to priority pursuant to Bankruptcy Code

5    § 507(a).

6

7    1.6    "Allowed" means, with respect to any Claim, such Claim or any portion

8    thereof that (i) has been allowed by a Final Order of the Bankruptcy Court; (ii) is listed in

9    any of the Debtor's Schedules and for which no contrary proof of claim has been filed, other

10   than a Claim that is listed in the Debtor's Schedules at zero or as disputed, contingent, or

11   unliquidated; (iii) is evidenced by a proof of claim that has been timely filed with the

12   Bankruptcy Court on or before the Claims Bar Date or deemed to be timely filed pursuant to

13   any Final Order of the Bankruptcy Court or under applicable law, and as to which (A) no

14   objection to its allowance has been filed on or before the Claims Objection Deadline, or (B)

15   any objection to its allowance has been settled or withdrawn, or has been overruled by a

16

17   Final Order; or (iv) is allowed pursuant to the terms of this Plan (regardless of whether such

18   claim has been listed by the Debtor in its Schedules and regardless of whether a proof of

19   claim has been filed in respect thereof); provided, however, that Claims temporarily allowed

20   solely for the purpose of voting to accept or reject this Plan pursuant to an order of the

21   Bankruptcy Court shall not be considered Allowed Claims for the purposes of distribution

22   under this Plan.

23

24

25   FIRST AMENDED PLAN OF REORGANIZATION – Page 3
     123326.0013/1676230.1
26

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1.7    "Assets" means, collectively, all of the property, as defined in section 541 of the Bankruptcy Code (including, without limitation, all of the assets, property, interests (including equity interests) and effects), real and personal, tangible and intangible (including without limitation, all Causes of Action, permits, and licenses) held by the Debtor as of the date of entry of the Confirmation Order, wherever situated as such properties exist on the Effective Date or thereafter.

1.8    "Assumed Contracts and/or Leases" means the contracts and/or leases set forth in Schedule 5.1 to the Plan as well as contracts and/or leases previously assumed pursuant to Bankruptcy Code § 365.

1.9    "Avoidance Actions" means claims or Causes of Action of the Estate arising out of or maintainable pursuant to Chapter V of the Bankruptcy Code or under any other similar applicable law, regardless of whether or not such actions have been commenced prior to the Effective Date including without limitation the Avoidance Actions arising from the EC/ECM Substantive Consolidation.

1.10    "Bankruptcy Case" means the Chapter 11 case initiated by the Debtor's filing on the Petition Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code. The Bankruptcy Case is being administered in the Bankruptcy Court as Case No. 08-40599.

1.11    "Bankruptcy Code" means title 11 of the United States Code, as applicable to the Bankruptcy Case.

FIRST AMENDED PLAN OF REORGANIZATION – Page 4
123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1      1.12    "Bankruptcy Court" means the United States Bankruptcy Court for the

2 Western District of Washington, at Tacoma, or, in the event such court ceases to exercise

3 jurisdiction over any Bankruptcy Case, such court or adjunct thereof that exercises

4 jurisdiction over such Bankruptcy Case in lieu of the United States Bankruptcy Court for the

5 Western District of Washington, at Tacoma.

6

7      1.13    "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy

8 Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil

9 Procedure, as applicable to the Bankruptcy Case or proceedings therein, and the Local Rules

10 of the Bankruptcy Court, as applicable to the Bankruptcy Case or proceedings therein, as the

11 case may be.

12

13      1.14    "Berman Collateral" means those certain 9 rail cars retained by the Debtor and

14 which are described in the Berman Loan Agreement.

15      1.15    "Berman Loan Agreement" means that certain Loan Agreement and

16 Financing of Twenty One (21) Rail Cars, dated June 14, 2006, between Berman and the

17 Debtor.

18      1.16    "Berman Secured Claim" means the Allowed Secured Claim held by Berman

19 arising under the Berman Loan Agreement.

20

21      1.17    "Berman" means John M. Berman.

22      1.18    "Business Day" means any day on which commercial banks are required to be

23 open for business in Washington State.

24

25 FIRST AMENDED PLAN OF REORGANIZATION – Page 5

26 123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1.19 "Cash" means legal tender of the United States of America and equivalents thereof.

1.20 "Causes of Action" means any and all claims, causes of action, or any other right to relief that the Debtor or Reorganized Debtor have against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in the Disclosure Statement filed by the Debtor in connection with this Plan or whether or not any payment was made or is made on account of any Claim including, but not limited to, the Claims Objections, the Cowlitz County Tax Appeal and the C&C Claim Objection.

1.21 "C&C Claim Objection" means the Debtor's or Reorganized Debtor's objections to the pre-petition claim of Columbia & Cowlitz Railroad Co. ("C&C") filed in the Bankruptcy Estate in the amount of $2,043,195.41 and any other claims for relief which may be filed against C&C that the Debtor or Reorganized Debtor may hold related to the amounts that C&C previously has charged the Debtor or will continue to charge the Debtor or Reorganized Debtor in connection with the services that C&C has provided or will provide to the Debtor and Reorganized Debtor as a rail carrier.

1.22 "Chlor-Alkali Facility" means the real property, improvements and fixtures owned by the Debtor.

FIRST AMENDED PLAN OF REORGANIZATION – Page 6
123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1.23 "Citicorp Collateral" means the 28 rail cars purchased by the Debtor pursuant to the Citicorp PSA.

1.24 "Citicorp Order" means the Order Denying Relief From Stay and Granting Debtor's Motion for Approval of Citicorp Compromise Pursuant to Bankruptcy Rule 9019, dated August 11, 2008.

1.25 "Citicorp PSA" means that certain Purchase and Sale Agreement dated June 23, 2008, between Citicorp and Debtor and approved by the Bankruptcy Court in the Citicorp Order.

1.26 "Citicorp Secured Claim" means the Allowed Secured Claim held by Citicorp arising under the Citicorp PSA.

1.27 "Citicorp" means Citicorp Railwork, LLC.

1.28 "Claim" means a claim against the Debtor whether or not asserted, as defined in Section 101(5) of the Bankruptcy Code.

1.29 "Claims Bar Date" means May 22, 2008, the date designated by the Bankruptcy Court as the last date(s) for timely filing proofs of Claim against the Debtor.

1.30 "Claims Objections" means the objections of the Debtor or the Reorganized Debtor to the Claims filed or deemed filed in the Bankruptcy Case, including, but not limited to, the C&C Claim Objection, subject to the terms of Article IX of the Plan.

1.31 "Claims Objection Deadline" means the later of the first Business Day which is the later of (i) thirty (30) days after the Effective Date, (ii) thirty (30) days after a specific

FIRST AMENDED PLAN OF REORGANIZATION – Page 7
123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

proof of claim was filed or (iii) such other time as may be ordered by the Bankruptcy Court, as such dates may be from time to time extended by the Bankruptcy Court without further notice to parties in interest.

1.32 "Class" means a category of Claims or Interests described in Article III of this Plan.

1.33 "Class 7 Fund" has the meaning provided in Section 3.7(b) of the Plan.

1.34 "Closing" means the conveyance and transfer of the Debtor's Completed Chlor-Alkali Facility, as contemplated by the Plan.

1.35 "Completed Chlor-Alkali Facility Sale" means sale of the Debtor's Completed Chlor-Alkali Facility at a Closing occurring on or before the third anniversary of the Effective Date, whether such sale is of all or substantially all of the Reorganized Debtor's Assets or sale of all, or substantially all of, Reorganized Debtor's issued and outstanding equity securities.

1.36 "Completed Chlor-Alkali Facility" means the Chlor-Alkali Facility, equipped with a fully installed and operational HCL Burner.

1.37 "Confirmation Hearing" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1128 of the Bankruptcy Code, as such hearing may be continued.

1.38 "Confirmation Order" shall mean the Final Order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy.

FIRST AMENDED PLAN OF REORGANIZATION – Page 8
123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1.39 "Cowlitz County Tax Appeal" means the Debtor's right to challenge and appeal the assessed value of the Debtor's Longview facility for tax years 2007 and 2008.

1.40 "Creditors' Committee" means the Official Committee of Unsecured Creditors appointed in the Debtor's Bankruptcy Case pursuant to section 1102(a) of the Bankruptcy Code.

1.41 "Cure Amount" means the amount and/or performance required to satisfy the Debtor's obligations under section 365(b) of the Bankruptcy Code with respect to the Debtor's assumption of any Executory Contract or Unexpired Lease which amount and/or performance will be determined in accordance with the procedures set forth in Article V of this Plan, and the Cure Amount shall be set forth in Schedule 5.1 attached hereto, except as may be ordered by a Final Order.

1.42 "Cure Claim" means the Claim of any party to an Assumed Executory Contract and/or Lease for a Cure Amount.

1.43 "Debtor" means Equa-Chlor, LLC, a Washington limited liability company.

1.44 "DIP Agent" means Prudential.

1.45 "DIP Lenders" means the lenders under the Postpetition Credit Agreement.

1.46 "DIP Loan Collateral" means all of the Debtor's pre and postpetition assets securing the DIP Loan.

1.47 "DIP Loan Facility" means the Debtor's Chlor-Alkali Facility.

FIRST AMENDED PLAN OF REORGANIZATION – Page 9
123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1.48  "DIP Loan Secured Claim" means the amounts owing to the Postpetition Lenders arising under the Postpetition Credit Agreement and the Final DIP Order, comprised of the principal balance, accrued and unpaid interest thereon and all accrued and unpaid fees and expenses of the Postpetition Lenders and the Administrative Agent.

1.49  "DIP Loan" means the loan made to the Debtor pursuant to the Postpetition Credit Agreement.

1.50  "Disclosure Statement Approval Order" means that certain order of the Bankruptcy Court entered on December 18, 2008, approving the Disclosure Statement, as may be amended, modified or supplemented from time to time.

1.51  "Disclosure Statement" means the written disclosure statement that relates to this Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified or supplemented from time to time.

1.52  "Disputed 2008 Ad Valorem Tax" means the Cowlitz County Treasurer Office's 2008 assessment of ad valorem taxes against the Chlor-Alkali Facility, which the Debtor disputes and has protested.

1.53  "Disputed" means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court as provided in the Postpetition Credit Agreement and the Final DIP Order.

FIRST AMENDED PLAN OF REORGANIZATION – Page 10
123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1     1.54    "Distribution" means any distribution by the Debtor to a Holder of an

2   Allowed Claim or Interest.

3     1.55    "Distributable Cash Amount" has the meaning set forth in Section 6.2(a).

4     1.56    "EC/ECM Substantive Consolidation" shall mean the consolidation of all the

5   assets and liabilities of EC and ECM on the Effective Date and immediately prior to the

6   Restructuring Transactions.

7

8     1.57    "EC" means Equa-Chlor, LLC.

9     1.58    "ECM" means Equa-Chlor Marketing, LLC.

10    1.59    "ECM Affiliate Assets" means all Assets held by ECM as of the Effective

11  Date.

12    1.60    "ECM Affiliate Liabilities" means all Liabilities of ECM as of the Effective

13
    Date.
14

15    1.61    "Effective Date" means 12:01 a.m. on the day that is the day that all

16  conditions to the Effective Date have been satisfied or waived pursuant to Section 11.1 of the

17  Plan.

18    1.62    "Equa-Chlor, LLC" means the Debtor in the Bankruptcy Case.

19    1.63    "Estate" means the estate that was created by the commencement by the

20  Debtor of a Bankruptcy Case pursuant to section 541 of the Bankruptcy Code.

21

22    1.64    "Estate Cash" means any cash or cash equivalents the Debtor holds upon the

23  Effective Date, up to the amount of the Distributable Cash Amount.

24

25  FIRST AMENDED PLAN OF REORGANIZATION – Page 11
    123326.0013/1676230.1
26

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1    1.65    "Estate Liabilities" shall mean all liabilities of the Debtor classified and dealt

2    with in this Plan that do not constitute Reorganized Company Liabilities.

3    1.66    "Executory Contract or Unexpired Lease" means all executory contracts and

4    unexpired leases to which the Debtor and/or ECM is a party.

5    1.67    "Final DIP Order" means the Final Order (a) Authorizing Debtor to Obtain

6    Postpetition Financing Pursuant to Sections 363 and 364 of Bankruptcy Code, (b) Granting

7

8    Liens and Super Priority Claims to Postpetition Lender Pursuant to Section 364 of

9    Bankruptcy Code, (c) Authorizing Use of Cash Collateral Pursuant to Section 363 of the

10   Bankruptcy Code, and (d) Providing Adequate Protection to Prepetition Lenders Pursuant to

11   Sections 361, 362, 363 and 364 of the Bankruptcy Code, entered by the Bankruptcy Court on

12   April 29, 2008.

13

14   1.68    "Final Order" means an order or judgment of the Bankruptcy Court, or other

15   court of competent jurisdiction, as entered on the docket in this chapter 11 case or the docket

16   of any other court of competent jurisdiction, which has not been reversed, stayed, modified

17   or amended, and as to which the time to appeal or seek certiorari has expired, and no appeal

18   or petition for certiorari has been timely taken, or as to which any appeal that has been taken

19   or any petition for certiorari that has been timely filed has been resolved by the highest court

20   to which the order or judgment was appealed or from which certiorari was sought.

21

22

23

24

25   FIRST AMENDED PLAN OF REORGANIZATION – Page 12
     123326.0013/1676230.1
26

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1.69 "503(b)(9) Procedures Order" means that certain Order Approving Procedures For Administering Claims Under Bankruptcy Code Section 503(b)(9), dated May 21, 2008, entered by the Bankruptcy Court on that date.

1.70 "General Unsecured Claim" means any Unsecured Claim other than an Administrative Expense Claim, a Priority Tax Claim or a Priority Claim, and includes any claim(s) related to or arising out of withdrawal liability with respect to any pension or similar plans in which the Debtor has been or is a participant.

1.71 "Hasa Offset" means the ongoing offset of amounts that the Debtor owes to Hasa, Inc. against the amounts that Hasa, Inc. owes to the Debtor.

1.72 "HCL Burner" means an approximately $3.5 million capital improvement to the Debtor's chlor-alkali plant whereby the Debtor may convert liquid chlorine to hydro-chloric acid.

1.73 "Holder" means a holder of a Claim or Interest, as applicable.

1.74 "Impaired" shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

1.75 "Independent Director EC Shares" means 4.5% of the issued common shares of the Reorganized Debtor as of the Effective Date, which upon conversion of all classes of preferred shares shall constitute 0.4% of all issued and outstanding common shares of the Reorganized Debtor.

FIRST AMENDED PLAN OF REORGANIZATION – Page 13
123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1.76    "Insider" shall have the meaning ascribed thereto in section 101(31) of the Bankruptcy Code.

1.77    "Interests" means the membership interests issued by the Debtor.

1.78    "Lien Finding" means the findings by the Court in the Final DIP Order as to the first position security interest held by the Senior Prepetition Secured Lenders in all of the Debtor's right, title and interest in personal property and real property, except for Avoidance Actions.

1.79    "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.80    "Management EC Shares" means 46.5% of the issued common shares of the Reorganized Debtor as of the Effective Date, which upon conversion of all preferred shares of the Reorganized Debtor shall constitute 4.1% of all issued and outstanding common shares of the Reorganized Debtor.

1.81    "Original EC/ECM Member" means Chlorine Partners, L.P. as the holder of 100% of the Interests in the Debtor and ECM.

1.82    "Original EC/ECM Membership Units" means all of the issued and outstanding membership interests in the Debtor and ECM held by the Original EC/ECM Member.

1.83    "Parsons" means Parsons RCI, Inc., formerly known as Robinson Construction, Inc.

FIRST AMENDED PLAN OF REORGANIZATION – Page 14
123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1.84 "Parsons EC Shareholder" means Parsons as the holder of the Parsons EC Shares.

1.85 "Parsons EC Shares" means the Class B convertible preferred shares of the Reorganized Debtor, which shares shall be entitled to a 6% PIK Dividend, and upon conversion of all outstanding Parsons EC Shares and Prudential EC Shares shall result in the lesser of fully diluted ownership of 5% of all issued and outstanding common shares of the Reorganized Debtor or such common shares in number as shall equal in the aggregate a value of $2.0 million.

1.86 "Parsons Installment Obligation" has the meaning set forth in Section 3.2.

1.87 "Parsons Plan Note" means a promissory note, made, executed and delivered by the Reorganized Debtor in the original principal amount of $4.0 million, substantially in the form to be included in the Plan Supplement, which shall be transferred to Parsons on the Effective Date in accordance with the Restructuring Transactions.

1.88 "Parsons Settlement Agreement" means that certain Amended and Restated Settlement Agreement, dated April 29, 2008, between and among Parsons, Prudential and the Debtor, and approved by the Parsons Settlement Approval Order.

1.89 "Parsons Settlement Approval Order" means that certain order of the Bankruptcy Court, dated April 29, 2008, approving the Parsons Settlement Agreement.

1.90 "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership,

FIRST AMENDED PLAN OF REORGANIZATION – Page 15
123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

1.91 "Petition Date" means February 15, 2008.

1.92 "PIK Dividend" means a payment in kind dividend consisting of Class A preferred shares, in the case of Prudential, and Class B preferred shares, in the case of Parsons.

1.93 "Plan" means this plan of reorganization as the same may hereafter be amended, modified or supplemented, and, to the extent amended, modified or supplemented.

1.94 "Plan Supplement" means the document (as may be amended, modified or supplemented) containing the forms of documents specified in Section 13.6 of the Plan.

1.95 "Postpetition Agent" means Prudential, as agent for the Postpetition Lenders.

1.96 "Postpetition Collateral" means that collateral so-described in the Final DIP Order.

1.97 "Postpetition Credit Agreement" means that certain Senior Secured Super-Priority Debtor in Possession Credit Agreement between Debtor and the Postpetition Lenders, dated February 21, 2008, as amended, and as approved by the Final DIP Order.

1.98 "Postpetition Lenders" means the lenders under the Postpetition Credit Agreement.

1.99 "Prepetition Agent" means Prudential, as the Administrative Agent under the Prepetition Credit Agreement.

FIRST AMENDED PLAN OF REORGANIZATION – Page 16
123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1.100 "Prepetition Credit Agreement" means that Amended and Restated Credit Agreement entered into as of May 11, 2006, and as amended from time to time thereafter, between the Debtor and the Senior Prepetition Secured Lenders.

1.101 "Priority Claim" means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

1.102 "Priority Tax Claim" means a Claim against the Debtor that is of a kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.103 "Priority Vacation Claim" means a Claim for vacation pay entitled to priority under section 507(a)(4)(A) of the Bankruptcy Code.

1.104 "Priority Wage Claim" means a Claim other than a Priority Vacation Claim entitled to priority under section 507(a)(4)(A) of the Bankruptcy Code.

1.105 "Pro Rata" means with respect to any Claim or Interest, at any time, the proportion that the amount of the Claim or Interest in a particular Class bears to the aggregate amount of all Claims or Interests (including Disputed Claims or Interests) in such Class, unless in each case the Plan provides otherwise.

1.106 "Professional Compensation" means (i) any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals employed by the Debtor and the Creditors' Committee and (ii) any amounts the Bankruptcy Court allows pursuant to sections

FIRST AMENDED PLAN OF REORGANIZATION – Page 17
123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

1.107 "Prudential" means The Prudential Life Insurance Company of America.

1.108 "Prudential EC Shareholder" means Prudential as the holder of the Prudential EC Shares.

1.109 "Prudential EC Shares" means the following equity securities of the Reorganized Debtor: (a) 49.0% of the common shares of the Reorganized Debtor to be outstanding immediately after the Restructuring Transactions; and (b) the Class A convertible preferred shares of the Reorganized Debtor, which preferred shares shall be entitled to a 6% PIK Dividend and which, together with the common shares set forth in subsection (a) hereof, after conversion of all outstanding Parsons EC Shares and Prudential EC Shares will result in a fully diluted ownership of at least 90.5% of all issued and outstanding shares of the Reorganized Debtor.

1.110 "Prudential Exit and Working Capital Loans" means the loans made by Prudential to the Reorganized Debtor under the Revolving Credit Agreement.

1.111 "Prudential Plan Note" means a promissory note, made, executed and delivered by the Reorganized Debtor in the original principal amount of $13.0 million, substantially in the form to be included in the Plan Supplement, which note shall be transferred to Prudential on the Effective Date in accordance with the Restructuring Transactions to satisfy the obligations outstanding under the DIP Loan as of the Effective

FIRST AMENDED PLAN OF REORGANIZATION – Page 18
123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

Date and, together with the Prudential EC Shares, to satisfy the Senior Prepetition Secured Lenders Claim.

1.112 "Record Date" means the date established in the Disclosure Statement Approval Order or any other Final Order of the Bankruptcy Court for determining the identity of holders of Allowed Claims or Interests entitled to vote or accept or reject this Plan and receive Distributions under this Plan. If no Record Date is established in the Disclosure Statement Approval Order or any other order of the Bankruptcy Court, then the Record Date shall be the date of the entry of the Disclosure Statement Approval Order.

1.113 "Record Holder" means the Holder of a Claim or Interest as of the Record Date.

1.114 "Rejected Contracts and/or Leases" means all Executory Contracts and Unexpired Leases, other than the Executory Contracts and Unexpired Leases previously assumed by order of the Bankruptcy Court or which are identified on Schedule 5.1 as Executory Contracts or Unexpired Leases to be assumed on the Effective Date.

1.115 "Reorganized Debtor" means Equa-Chlor, Inc.

1.116 "Reorganized Company Liabilities" means only those liabilities of EC and ECM that are explicitly assumed by the Reorganized Debtor pursuant to this Plan.

1.117 "Restructuring Transactions" has the meaning as set forth in Section 6.2 hereof.

FIRST AMENDED PLAN OF REORGANIZATION – Page 19
123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1.118 "Revolving Credit Agreement" means that certain Senior Secured Credit Agreement, dated as of the Effective Date, which shall provide a $3.0 million revolving line of credit for exit financing necessary to fully fund and pay the cash distributions required under the Plan on the Effective Date and to also fund working capital loans for Reorganized Debtor's operations. The Revolving Credit Agreement shall provide for execution and delivery of a Revolving Credit Note.

1.119 "Revolving Credit Note" means that certain promissory note, in the original principal amount of $3.0 million, made and delivered by the Reorganized Debtor to Prudential on the Effective Date, substantially in the form to be included in the Plan Supplement, with a non-default interest rate of LIBOR plus 500 basis points.

1.120 "Schedule 5.1" means the schedule to be provided in accordance with Article V of this Plan, which shall contain a list of (i) all Executory Contracts and Unexpired Leases to be assumed under this Plan, and (ii) the Cure Amount (if any) for any Executory Contract or Unexpired Lease to be assumed under this Plan.

1.121 "Schedules" means the Schedules of Assets and Liabilities the Debtor filed in its Bankruptcy Case, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

1.122 "Secured Claim" means a claim (as defined in section 101(5) of the Bankruptcy Code) that is secured by a valid, perfected and non-avoidable lien on collateral against any obligor or guarantor to such indebtedness (including any Lien on collateral) to

FIRST AMENDED PLAN OF REORGANIZATION – Page 20
123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1  the extent of the value of the holder of the Claim's interest in such collateral as provided in

2  section 506(a) of the Bankruptcy Code.

3  1.123 "Senior Prepetition Secured Lenders' Claim" means 1) the Claim of the

4  Senior Prepetition Secured Lenders arising under the Prepetition Credit Agreement and the

5
6  Final DIP Order comprised of (a) any and all amounts owing or outstanding under the

7  Prepetition Credit Agreement (including, without limitation, all Obligations as defined in the

8  Prepetition Credit Agreement) or any other Prepetition Loan Document, and interest on, fees

9  and other costs, expenses and charges owing in respect of, such amounts (including, without

10 limitation, any make-whole premium, and any reasonable attorneys', accountants', financial

11 advisors' and other fees and expenses that are chargeable or reimbursable pursuant to the

12
13 Prepetition Credit Agreement or any other related loan documents); (b) the amount of any

14 postpetition diminution in value of the Senior Prepetition Secured Lenders' security interests

15 in the collateral set forth in the Lien Finding secured by the Adequate Protection Collateral;

16 and (c) all accrued and unpaid fees and expenses of the Senior Prepetition Secured Lenders

17 and the Administrative Agent in connection with the Senior Prepetition Secured Lenders'

18 Claim and all accrued and unpaid postpetition interest on the Senior Prepetition Secured

19 Lenders' Claim (to the extent of the value of the Senior Prepetition Secured Lenders'

20
21 Collateral and Adequate Protection Collateral) and 2) the Senior Prepetition Secured

22 Lenders' claim under Bankruptcy Code § 507(b) in the amount of any diminution in value of

23

24

25 FIRST AMENDED PLAN OF REORGANIZATION – Page 21
26 123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

Case 08-40599-PBS   Doc 404-1   Filed 02/19/09   Entered 02/19/09 14:27:41   Page 26 of 30

the Senior Prepetition Secured Lenders' Collateral in connection with the Debtor's use thereof.

1.124 "Senior Prepetition Secured Lenders' Collateral" means the collateral securing the Debtor's prepetition obligations to the Senior Prepetition Secured Lenders as set forth in the Lien Finding and Postpetition Collateral as set forth in the Final DIP Order.

1.125 "Senior Prepetition Secured Lenders' Deficiency Claim" means the Allowed Unsecured Claim held by Prudential, as Prepetition Agent, in the amount the Senior Prepetition Secured Lenders' Claim exceeds the combined value of the Senior Prepetition Secured Lenders' Collateral and Adequate Protection Collateral.

1.126 "Senior Prepetition Secured Lenders" means Prudential, as assignee and successor to GMAC Commercial Finance LLC, and as agent and a lender and other lenders from time to time party to the Prepetition Credit Agreement.

1.127 "U.S. Trustee" means the United States Trustee.

1.128 "Unimpaired" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

1.129 "Unsecured Claim" means any Claim other than a Secured Claim, an Administrative Expense Claim, a Priority Tax Claim, a Priority Claim or the Senior Prepetition Secured Lenders' Deficiency Claim.

1.130 "Wells Fargo Collateral" means that certain 1995 Trackmobile, Model 4200, SN 95870.

FIRST AMENDED PLAN OF REORGANIZATION – Page 22
123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1.131  "Wells Fargo Equipment Lease" means that certain Equipment Lease (Purchase Agreement) between Wells Fargo and the Debtor dated as of November 28, 2005.

1.132  "Wells Fargo" means Wells Fargo Bank National Association.

1.133  "WeyCo Lease" means that certain Lease Contract, dated September 8, 2003, between WeyCo and the Debtor, leasing the Debtor its plant site in Longview, Washington.

1.134  "WeyCo" means Weyerhaeuser Company.

**Section 1.2**  *Time.*  Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Washington, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS; IMPAIRMENT

**Section 2.1**  *Summary.*  Categories of Claims and Interests set forth below classify all Claims against and Interests in the Debtor for all purposes of this Plan. A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. The treatment with respect to each Class of Claims and Interests provided for in this Article II shall be in full and complete satisfaction, release and discharge of such Claims and Interests.

FIRST AMENDED PLAN OF REORGANIZATION – Page 23
123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

The classification of Claims under the Plan is as follows:

| Class | Designation | Impairment | Entitled To Vote |
|---|---|---|---|
| 1 | Secured and Unsecured Claim of Senior Prepetition Secured Lenders | Impaired | Yes |
| 2 | Secured and Unsecured Claim of Parsons | Impaired | Yes |
| 3 | Secured Claim of Wells Fargo | Not Impaired | No |
| 4 | Secured Claim of Citicorp | Not Impaired | No |
| 5 | Secured Claim of Berman | Unimpaired[1] | No |
| 6 | Priority Claims | Not Impaired | No |
| 7 | General Unsecured Claims | Impaired | Yes |
| 8 | ECM Claims Against EC | Impaired | No |

The classification of Interests under the Plan is as follows:

| Class | Designation | Impairment | Entitled To Vote |
|---|---|---|---|
| 9 | Original Membership Interests in the Debtor and ECM | Impaired | No |

**Section 2.2** *Deemed Rejection of Plan.* The membership interests of the Original EC/ECM Member (Class 9) will be cancelled upon the Effective Date and it will not receive or retain any property under this Plan. The Holder of Class 8 Claims shall also not receive any distribution on account of its claims. Classes 8 and 9 are not entitled to vote to accept or reject this Plan and pursuant to section 1126(g) of the Bankruptcy Code, are deemed to have rejected this Plan.

---

[1] The originally filed Plan provided for payments over time in payment of the Class 5 Allowed Secured Claim which made the Class 5 Claim impaired. Since the filing of the Plan, however, the Debtor received an offer to purchase the collateral securing the Class 5 Claimant. The sale has closed and, accordingly, the Debtor is amending the Plan herein to provide for payment in full of the Class 5 Allowed Secured Claim. The payment in full of the Class 5 Claimant as provided under this Amended Plan makes the Class 5 Claim unimpaired. See Section 3.5, infra.

FIRST AMENDED PLAN OF REORGANIZATION – Page 24

123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

**Section 2.3** *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.*

The Debtor will request confirmation of this Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code with respect to any Class which rejects, or is deemed to have rejected, this Plan.

**ARTICLE III**
**TREATMENT OF CLAIMS AND INTERESTS**

**Section 3.1** *Class 1—Secured and Unsecured Claim of Senior Prepetition Secured Lenders*

(a) Classification. Class 1 consists of the Secured and Unsecured Claim of the Senior Prepetition Secured Lenders (the "Class 1 Claim"), which is secured by the Senior Prepetition Secured Lenders' Collateral and Adequate Protection Collateral.

(b) Allowance. The Class 1 Claim is deemed an Allowed Claim for all purposes, pursuant to the Final DIP Order.

(c) Treatment. On the Effective Date (or as soon as possible thereafter), in exchange for and in full satisfaction of the Senior Prepetition Secured Lenders Secured and Unsecured Claim, the Holders of the Class 1 Claim shall receive the following Distributions in accordance with the Restructuring Transactions: (i) the Prudential EC Shares; and (ii) the Prudential Plan Note, secured by substantially all of the Reorganized Debtor's existing and future assets, the priority of such security interests being junior to the Lien securing the Prudential Exit and Working Capital Loans but *pari passu* with the Lien securing the Parsons Plan Note. The Lien against the Senior Prepetition Secured Lenders'

FIRST AMENDED PLAN OF REORGANIZATION – Page 25
123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

Collateral and the DIP Loan Collateral, shall be preserved and retained as security for the Prudential Plan Note, the Parsons Plan Note and for the Prudential Exit and Working Capital Loans, together with all other Assets contributed by the Debtor to the Reorganized Debtor pursuant to Section 6.2 of the Plan. For purposes of this Plan only, the Senior Prepetition Secured Lender's Deficiency Claim shall be deemed waived on the Effective Date and the Senior Prepetition Secured Lenders shall not be members of Class 7 and shall not receive any Distribution from the Class 7 Fund.

(d) Voting. Class 1 is an Impaired Class, and, pursuant to section 1126 of the Bankruptcy Code, the Holder of Allowed Class 1 Claim is entitled to vote to accept or reject the Plan.

**Section 3.2** *Class 2--Secured and Unsecured Claim of Parsons*

(a) Classification. Class 2 consists of the Secured and Unsecured Claim held by Parsons pursuant to the Parsons' Settlement Order and the Parsons Settlement (the "Class 2 Claim").

(b) Allowance. The Class 2 Claim is deemed an Allowed Claim for all purposes, as provided in the Parsons Settlement Order.

(c) Treatment. On the Effective Date (or as soon as possible thereafter), in exchange for and in full satisfaction of the Class 2 Claim, Parsons shall receive the following Distributions in accordance with the Restructuring Transactions: (i) the Parsons EC Shares; (ii) the Parsons Plan Note, secured by substantially all of the Reorganized

FIRST AMENDED PLAN OF REORGANIZATION – Page 26
123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1   Debtor's existing and future assets, the priority of such Lien being junior to the Lien securing

2   the Prudential Exit and Working Capital Loan but *pari passu* with the Lien securing the

3   Prudential Plan Note; and (iii) as provided in the Parsons Settlement, Cash totaling Three

4   Million Dollars ($3,000,000.00) (the "Parsons Installment Obligation") that will be paid in

5

6   three equal installments from the Reorganized Debtor as follows: (x) the first installment in

7   the amount of One Million Dollars ($1,000,000.00) (the "First Installment") shall be paid to

8   Parsons on the Effective Date but immediately after the Restructuring Transactions;

9   *provided, however*, that the first $100,000 of the First Installment shall be contributed on

10   Parsons' behalf to the Class 7 Fund (as defined below) to satisfy Parsons' obligation to fund

11   $100,000 into the Class 7 Fund pursuant to Section 3.7 of the Plan; (y) the second installment

12

13   in the amount of One Million Dollars ($1,000,000) (the "Second Installment") shall be paid

14   to Parsons 90 days after the Effective Date; and (z) the third installment in the amount of One

15   Million Dollars ($1,000,000) shall be paid to Parsons 180 days after the Effective Date. Any

16   deficiency claim held by Parsons shall be deemed waived on the Effective Date. Parsons

17   shall not be a member of Class 7 and shall not receive any distribution from the Class 7

18   Fund.

19         (d)    Voting. Class 2 is an Impaired Class, and, pursuant to section 1126 of

20   the Bankruptcy Code, the Holder of the Allowed Class 2 Claim is entitled to vote to accept or

21

22   reject the Plan.

23         **Section 3.3**    *Class 3—Secured Claim of Wells Fargo*

24

25   FIRST AMENDED PLAN OF REORGANIZATION – Page 27

26   123326.0013/1676230.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1         (a)    Classification.  Class 3 consists of the Allowed Secured Claim of

2    Wells Fargo (the "Class 3 Claim").

3         (b)    Allowance.  The Class 3 Claim is deemed an Allowed Claim for all
4
     purposes.
5
          (c)    Treatment.  The Holder of the Class 3 Claim shall retain the Wells
6
7    Fargo Collateral as security for the Class 3 Claim and shall receive as soon as practicable

8    after the Effective Date all amounts necessary, if any, in order to cure any defaults under the

9    Wells Fargo Equipment Lease.  From and after the Effective Date, the Reorganized Debtor

10   shall fully and timely perform all of the Debtor's remaining obligations under Wells Fargo

11   Equipment Lease.
12
          (d)    Voting: Classes 3 is Unimpaired.  Pursuant to section 1126 of the
13
14   Bankruptcy Code, the Holder of the Class 3 Claim is deemed to have accepted the Plan and is

15   not entitled to vote to accept or reject the Plan.

16       **Section 3.4**    *Class 4—Secured Claim of Citicorp*

17        (a)    Classification.  Class 4 consists of the Citicorp Secured Claim (the

18   "Class 4 Claim").
19
          (b)    Allowance.  The Class 4 Claims is deemed an Allowed Claim for all
20
21   purposes, pursuant to the Citicorp Settlement Order.

22        (c)    Treatment.  The Holder of the Class 4 Claim shall retain the Citicorp

23   Collateral as security for the Class 4 Claim and shall receive as soon as practicable after the

24

25   FIRST AMENDED PLAN OF REORGANIZATION – Page 28
26

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

Effective Date all amounts necessary, if any, in order to cure any defaults under the Citicorp

PSA. From and after the Effective Date, the Reorganized Debtor shall fully and timely

perform all of the Debtor's obligations under the Citicorp PSA.

        (d)    Voting. Class 4 is Unimpaired. Pursuant to Section 1126 of the

Bankruptcy Code, the Holder of the Class 4 Claim is deemed to have accepted the Plan is not

entitled to vote to accept or reject the Plan.

       **Section 3.5**   *Class 5—Secured Claim of Berman*

        (a)    Classification. Class 5 consists of the Allowed Secured Claim of

Berman ("Class 5 Claims").

        (b)    Allowance. The Class 5 Claim is deemed an Allowed Claim for all

purposes.

        (c)    Treatment. The Holder of the Class 5 Claim has been paid in full from

the sale of the Berman Collateral. The Debtor received an offer to purchase the Berman

Collateral from a third party which has been consummated and was sufficient to pay the

Allowed Class 5 Claim in full.

        (d)    Voting. Based on the sale of the Berman Collateral and the payment in

full of the Class 5 Claim, the Class 5 is Unimpaired. Pursuant to section 1126 of the

Bankruptcy Code, the Holder of the Class 5 Claim is deemed to have accepted the Plan and is

not entitled to vote to accept or reject the Plan.

       **Section 3.6**   *Class 6—Priority Claims*

FIRST AMENDED PLAN OF REORGANIZATION – Page 29
123326.0013/1676230.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1    (a)    Classification.  Class 6 consists of Allowed Priority Claims ("Class 6

2    Claims").

3        (b)    Treatment.  Each Holder of an all Allowed Priority Vacation Claims

4    shall be entitled to receive vacation pay in the ordinary course of business by the

5    Reorganized Debtor.  Except as to Allowed Priority Vacation Claims, and unless the Holder

6    agrees to accept deferred payments, as soon as practicable after the Effective Date, each

7    Holder of an Allowed Class 6 Claim shall be paid in full on account of its Allowed Class 6

8    Claim.

9

10        (c)    Voting.  Class 6 is Unimpaired.  Pursuant to section 1126 of the

11   Bankruptcy Code, each Holder of an Allowed Class 6 Claim is deemed to have accepted the

12   Plan and is not entitled to vote to accept or reject the Plan.

13

14        **Section 3.7**    *Class 7—General Unsecured Claims Without Priority*

15        (a)    Classification.  Class 7 consists of Allowed General Unsecured Claims

16   ("Allowed Class 7 Claims").

17        (b)    Treatment.  Holders of Allowed Class 7 Claims shall be paid by the

18   Debtor on the Effective Date (or as soon as practicable), provided, however that a

19   Distribution to Holders of Allowed Class 7 Claims will be made no later than 30 days after

20   the Effective Date ("Initial Distribution"), a Pro Rata Cash Distribution from a $300,000

21   fund (the "Class 7 Fund"), which shall be funded with: (x) $200,000 from the Debtor's

22   Estate, and (y) $100,000 to be contributed by Parsons.  Upon entry of the Confirmation Order

23

24

25   FIRST AMENDED PLAN OF REORGANIZATION – Page 30

26   123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1 and prior to distribution to Holders of Class 7 Claims, the Class 7 Fund shall be held in Lane

2 Powell's trust account. For purposes of this Plan only, the Senior Prepetition Secured

3 Lenders and Parsons are not members of Class 7 and shall not receive any Distribution on

4 account of any deficiency claims they may hold, which shall be deemed satisfied as of the

5 Effective Date. The Claim Amount upon which the Pro Rata Cash Distribution to each

6 Holder of an Allowed Class 7 Claim will be calculated shall be net of any amount owed by

7 such Claimant to the Debtor that the Debtor is entitled to set off.

9         (c)    Voting. Class 7 is Impaired. Pursuant to section 1126 of the

10 Bankruptcy Code, each Holder of an Allowed Class 7 Claim is entitled to vote to accept or

11 reject the Plan.

12       **Section 3.8**   *Class 8—ECM Intercompany Claims*

14         (a)    Classification. Class 8 consists of all intercompany claims held by

15 ECM against the Debtor.

16         (b)    Treatment. The Holder of Class 8 Claims shall receive no distribution

17 on account of its claims, as provided pursuant to Section 6.2 of the Plan and substantive

18 consolidation of ECM's Assets and liabilities with the Assets and liabilities of the Debtor as

19 of the Effective Date. However, the creditors of ECM shall be treated for all purposes under

20 the Plan as creditors of the Debtor and any Avoidance Actions of ECM shall be deemed as

21

22 arising on the Debtor's Petition Date and shall be treated under the plan as the Debtor's

23 Avoidance Actions.

24

25 FIRST AMENDED PLAN OF REORGANIZATION – Page 31

26 123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

|   |   |
|---|---|
| 1 |        (c)     Voting.  Class 8 is Impaired.  The Holder of the Class 8 Claims shall |

(c)     Voting.  Class 8 is Impaired.  The Holder of the Class 8 Claims shall receive no Distribution on account of its Claims.  Pursuant to Section 1126(a) of the Bankruptcy Code, the Holder of the Allowed Class 8 Claims is not entitled to vote to accept or reject the Plan.

**Section 3.9**     *Class 9—Original Membership Interests in Debtor and ECM.*

(a)     Classification.  Class 9 consists of the Original Membership Interests in the Debtor and in ECM.

(b)     Treatment.  Class 9 is Impaired.  The Holder of Class 9 Interests shall receive no Distribution on account of its Original EC/ECM Membership Units.  As provided in Section 6.1 of the Plan, ECM's Assets and liabilities shall be deemed substantively consolidated with the Assets and liabilities of the Debtor as of the Effective Date.

(c)     Voting.  Class 9 is Impaired.  Pursuant to section 1126(g) of the Bankruptcy Code, the Holder of the Class 9 Interest is not entitled to vote and is deemed to have rejected the Plan.

**Section 3.10**     *Special Provisions Governing Unimpaired Claims.*  Except as otherwise provided in this Plan, nothing under this Plan is intended to or shall affect the Debtor's or Reorganized Debtor's rights and defenses in respect of any Claim that is Unimpaired under this Plan, including, but not limited to, all rights in respect of legal and equitable defenses to or setoffs or recoupment against or counter-claims with respect to such

FIRST AMENDED PLAN OF REORGANIZATION – Page 32
123326.0013/1676230.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

Unimpaired Claims, except as such rights and defenses have been previously resolved pursuant to a Final Order of the Bankruptcy Court.

## ARTICLE IV
## TREATMENT OF UNCLASSIFIED CLAIMS

**Section 4.1** *Summary.* Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims against the Debtor are not classified for purposes of voting on, or receiving Distributions under, this Plan. Claims of the DIP Lenders under the DIP Loan are also not classified for purposes of voting on, or receiving Distributions under, this Plan. Holders of such Claims are not entitled to vote on this Plan. All such Claims are instead treated separately in accordance with this Article IV and in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

**Section 4.2** *Administrative Expense Claims.*

(a) Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code and subject to section 502(d) of the Bankruptcy Code, each Holder of an Allowed Administrative Expense Claim shall be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (i) on, or as soon as reasonably practical after, the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such Holder and the Reorganized Debtor, or (iv) as otherwise ordered by the Bankruptcy Court; *provided, however*, that Allowed Administrative Expense Claims representing obligations incurred by the Debtor in the ordinary course of business, or

FIRST AMENDED PLAN OF REORGANIZATION – Page 33
123326.0013/1676230.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

otherwise assumed by the Reorganized Debtor on the Effective Date pursuant to this Plan, including any tax obligations arising after the Petition Date, will be paid or performed by the Reorganized Debtor when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations, except for the Disputed 2008 Ad Valorem Tax Claim and any other tax obligations subject to bona fide dispute. The known and/or estimated Administrative Expense Claims (other than Professional Compensation and the DIP Lenders' Administrative Claim) are set forth in Schedule 4.2 hereof.

(b)     Except as otherwise provided in this Plan or by other Court order, any Person holding an Administrative Expense Claim, other than an Administrative Expense Claim (i) previously asserted in connection with the 503(b)(9) Procedures Order; or (ii) arising from the operation by the Debtor of its business in the ordinary course of business, shall file a proof of such Administrative Expense Claim with the clerk of the Bankruptcy Court within thirty (30) days after the Reorganized Debtor provides notice by mail or by publication, in a form and manner approved by the Bankruptcy Court, of the occurrence of the Effective Date. At the same time, if a Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for the Reorganized Debtor and counsel for the Creditors' Committee (if prior to the Effective Date). Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever

FIRST AMENDED PLAN OF REORGANIZATION – Page 34
123326.0013/1676230.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

barred from seeking payment of such Administrative Expense Claim by the Debtor, the Estate, or the Reorganized Debtor.

(c)     Other than the payment of fees and expenses provided for under the Final DIP Order, any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within forty-five (45) days after the Effective Date.

**Section 4.3** *Priority Tax Claims.* With respect to any Allowed Priority Tax Claims not paid pursuant to prior Bankruptcy Court order, except to the extent that a Holder of an Allowed Priority Tax Claim agrees to different treatment, each Holder of an Allowed Priority Tax Claim will receive at the sole option of the Reorganized Debtor, (a) on the Effective Date or as soon thereafter as is practicable, Cash in an amount equal to such Allowed Priority Tax Claim, or (b) commencing on the Effective Date, or as soon thereafter as is practicable, and continuing over a period not exceeding five (5) years from and after the Commencement Date, equal semi-annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest for the period after the Effective Date at the rate determined under applicable non-bankruptcy law, provided that the first payment shall represent a percentage recovery at least equal to that expected to be received by holders of Allowed General Unsecured Claims, and subject to the sole option of the Reorganized Debtor to prepay the entire amount of the Allowed Priority Tax Claim. All Allowed Priority

FIRST AMENDED PLAN OF REORGANIZATION – Page 35
123326.0013/1676230.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1   Tax Claims which are not due and payable on or before the Effective Date will be paid in the

2   ordinary course of business as such obligations become due.

3       **Section 4.4**    *DIP Lender Claims.* The DIP Lenders and DIP Agent shall receive in

4   full satisfaction of the DIP Loan balance the Prudential Plan Note.  Any and all Liens

5   securing any amounts owed under the DIP Loan shall be preserved and shall secure the

6   Prudential Plan Note.

7

8                                    **ARTICLE V**
                   **TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

9       **Section 5.1**    *Assumption and Rejection of Executory Contracts and Unexpired*

10  *Leases.*

11

12      On the Effective Date, all Executory Contracts or Unexpired Leases of the Debtor

13  will be deemed rejected in accordance with the provisions and requirements of sections 365

14  and 1123 of the Bankruptcy Code, except for the Assumed Contracts and/or Leases set forth

15  on Schedule 5.1 to this Plan or which are otherwise assumed under a order of the Bankruptcy

16  Court.  The Debtor shall file Schedule 5.1 with the Bankruptcy Court and serve Schedule 5.1

17  on the non-Debtor parties under the agreements listed thereon no later than ten (10) days

18  prior to the last date for filing objections to confirmation of the Plan, *provided, however*, that

19  the Debtor may amend Schedule 5.1 at any time prior to the Confirmation Hearing.  Entry of

20  the Confirmation Order by the Bankruptcy Court shall constitute approval, as of the Effective

21  Date, of the assumption of the Assumed Contracts and/or Leases and the rejection of the

22  Rejected Contracts and/or Leases pursuant to sections 365(a) and 1123 of the Bankruptcy

23

24

25  FIRST AMENDED PLAN OF REORGANIZATION – Page 36
    123326.0013/1676230.1

26

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

Code. If the non-Debtor party to an Assumed Contract and/or Lease objects to the assumption of an Assumed Contract and/or Lease pursuant to the procedures set forth in Article 5.3, and such objection has not been resolved by the Effective Date, then such Assumed Contract and/or Lease will be deemed to be assumed (if at all) only upon the resolution of such objection pursuant to Article 5.3 and shall be deemed to be assumed by the Reorganized Debtor on the later of (i) the Effective Date or (ii) the date of assumption. On and after the Effective Date, the Reorganized Debtor shall be obligated to perform all the terms and conditions of any Assumed Contract and/or Lease.

**Section 5.2** *Rejection Damages Claims.*

(a) <u>Claims Against the Debtor</u>. All proofs of claim with respect to Claims arising from the rejection of the Rejected Contracts and/or Leases, if any, any and all of which are subject to the provisions of Bankruptcy Code § 502, must be filed with the clerk of the Bankruptcy Court and served upon counsel for the Debtor within thirty (30) days after the Effective Date. Any Claims arising from the rejection of Executory Contracts or Unexpired Leases that become Allowed Claims shall be classified and treated in accordance with the classes set forth in the Plan. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed within the time required by this section will be forever barred from assertion against the Debtor or the Reorganized Debtor, the Estate and property of the Debtor or Reorganized Debtor.

FIRST AMENDED PLAN OF REORGANIZATION – Page 37
123326.0013/1676230.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107